**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**DONNA MUDGETT, individually and**
**on behalf of all others similarly situated,**
          **Plaintiff,**

          v.                                        Case No.  11-C-0039

**NAVY FEDERAL CREDIT UNION,**
          **Defendant.**

---

## DECISION AND ORDER

The Telephone Consumer Protection Act ("TCPA") provides that it is unlawful for any person to make a call to a cell phone using "any automatic telephone dialing system." 47 U.S.C. § 227(b)(1).  An "automatic telephone dialing system" is defined in the TCPA as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." Id. § 227(a)(1).  In the present case, Donna Mudgett alleges that Navy Federal Credit Union ("Navy Federal") used an automatic telephone dialing system—an "autodialer"—to make calls to her cell phone.  Navy Federal moves for summary judgment on the ground that the evidence in the record establishes that the calls to Mudgett were dialed manually rather than through use of an autodialer.

The basic facts that give rise to this suit are these:  Plaintiff's son, Troy Mudgett, is a customer of Navy Federal and has some accounts that are past due.  Navy Federal referred Troy's accounts to its collections department, which began making calls to Troy. Navy Federal had difficulties reaching Troy at the contact numbers that he had provided, and so it began a process known as "skiptracing," in which a collections agent attempts to

find the debtor's current contact information by conducting internet searches and calling the debtor's friends and family. On April 28, 2010, a Navy Federal agent engaged in skiptracing found Ms. Mudgett's cell phone number through an internet search. This agent, Carol Martin, then made the call that generated the present lawsuit. A different collections agent, Amanda Owens, made two additional calls to Mudgett's cell phone in July 2010.

Navy Federal contends that its agents made all three of these calls the old-fashioned way—by manually dialing the number on an ordinary telephone—and that therefore it cannot be liable under the TCPA for making a call to a cell phone with an autodialer. As evidence, Navy Federal submits the declarations of the agents who made the calls to Mudgett—Martin and Owens. Both agents state that they manually dialed the numbers. Moreover, Martin states that she never handles calls placed by Navy Federal's autodialers in the course of her job. Navy Federal also submits a declaration from the manager of its collections department, Holly Sweeney, in which Sweeney explains Navy Federal's general policies and procedures regarding collections calls. Sweeney states that although Navy Federal does use autodialers for some purposes, she reviewed the records generated by the autodialers and determined that they were not used to make the calls to Mudgett's cell phone.

Mudgett makes two arguments in response. First, she contends that her own declaration states facts from which a reasonable fact-finder could infer that the calls to her cell phone were made by an autodialer—namely, that she told the agent who made the April 28th call to stop calling her cell phone and that the agent said that her cell number "could not be taken off the computer until midnight." (Mudgett Decl. ¶ 12, ECF No. 37.) Mudgett contends that a reasonable fact-finder could infer that the "computer" being

2

referred to was an autodialer and that Martin and Owens are lying about having dialed the phone themselves. Second, Mudgett contends that Navy Federal's phone and computer systems are interconnected, and that this interconnected system qualifies as an automatic telephone dialing system within the meaning of the TCPA. Therefore, argues Mudgett, Navy Federal is liable for making calls to her cell phone with an autodialer even if it is true that Martin and Owens manually dialed their phones.

Mudgett's first argument fails because her declaration does not give rise to a reasonable inference that Martin and Owens are lying about having manually dialed their phones. Even if it is true that the agent who spoke to Mudgett on April 28th (Mudgett says she spoke to Owens on that date, but Navy Federal's records indicate that she actually spoke to Martin) said that Mudgett's cell number was in a computer and that it could not be removed until midnight,[1] that fact standing alone does not give rise to a reasonable inference that the computer was an autodialer that actually dialed the phone. The fact that Mudgett's cell number was stored in a computer is simply not evidence of anything other than that the number was stored in a computer. As far as the record reveals, Martin and Owens could have read the number off of a computer screen and then manually dialed their phones. Although it is certainly possible that the computer was an autodialer and that the autodialer made the call, anything is possible, and Mudgett must point to some

---

[1] Most likely, Mudgett is confusing the April 28th call to her cell phone with an April 29th call to her home phone. The call to her home phone was made by an agent using an autodialer. Mudgett told that agent to stop calling her home number, and Navy Federal's records indicate that on April 29th Mudgett's home phone number was removed from the autodialer. However, because I must accept the facts stated in Mudgett's declaration as true for purposes of summary judgment, I will assume that the agent who called her cell phone on April 28th told her that her cell number was in a computer and that it could not be removed until midnight.

3

evidence in the record that would allow a fact-finder to reasonably conclude that it is more likely than not that the computer did more than store the number. Mudgett does not have any such evidence. Moreover, Navy Federal has searched the records generated by its autodialers and has determined that they never dialed Mudgett's cell phone number. Mudgett does not provide any reason for thinking that Navy Federal's records are inaccurate. Thus, the only reasonable conclusion a fact-finder could draw is that Navy Federal did not make the calls to Mudgett's cell phone with an autodialer.[2]

Mudgett's second argument is based on language of the TCPA that defines "automatic telephone dialing system" as equipment that has the <u>capacity</u> to autodial. See 47 U.S.C. § 227(a)(1). She argues that Navy Federal's autodialers are connected to the phones that were used to call her cell phone, and that even if the calls to her cell phone were placed manually, those calls were made using equipment having the capacity to autodial. In Mudgett's view, Navy Federal's agents "do not dial a standard telephone to

---

[2]Mudgett argues that the fact that she received additional calls on her cell phone in July is evidence that she was being called by an autodialer. She points out that the agent she talked to in April made a note of her request to stop calling her cell phone. She then argues that if the agent who called her in July actually manually dialed the phone after getting Mudgett's number from the notes of the April call (as she says she did) then that agent would have also seen the note asking Navy Federal to stop calling her cell phone. Mudgett argues that a fact-finder could infer from the fact that the calls were made in July that no human was reading the notes and that an autodialer actually dialed the phone. But the flaw in this reasoning is that the agent who made the calls in July could have simply ignored or disregarded the note about Mudgett's request that Navy Federal stop calling her cell phone. Thus, the mere fact that calls were made after Mudgett asked Navy Federal to stop making them is not evidence that the calls were made by an autodialer. If anything, this sequence of events suggests that the calls were not made by an autodialer. If Navy Federal had been using an autodialer and was able to remove Mudgett's cell number from the autodialer by midnight on April 28th, then the July calls would not have been placed, since by that time Mudgett's number would no longer have been stored in the autodialer.

4

contact people; instead, [Navy Federal's] phones are connected to, and place calls through, [Navy Federal's] integrated computer system." (Br. at 9, ECF No. 33.) Mudgett contends that Navy Federal's integrated system qualifies as an automatic telephone dialing system under the TCPA because the system as a whole has the capacity to store, produce and dial telephone numbers.

I have serious doubts as to whether manually dialing a telephone number on a phone that is connected to a computer system capable of autodialing gives rise to liability under the TCPA. Nonetheless, even if it did, Navy Federal would be entitled to summary judgment because Mudgett has not pointed to evidence from which a fact-finder could reasonably conclude that Martin and Owens placed calls from telephones that were connected to computers capable of autodialing. Mudgett does not submit any evidence from a witness who examined Navy Federal's phone system and determined that Martin and Owens used phones that were physically connected to computers or autodialers. Instead, she relies on excerpts from Navy Federal's "Phone Skills Manual," which she contends shows that Navy Federal's collections agents' phones are connected to Navy Federal's computer system, which in turn is connected to an autodialer. However, the Phone Skills Manual does not allow a reasonable fact-finder to conclude that the collections agents' phones are connected to Navy Federal's computer system. Rather, as far as the Manual indicates, the collections agents' phones are ordinary desk phones that operate independently of Navy Federal's computer system. Although the Manual seems to assume that collections agents will have computers at their desks in addition to phones, it does not suggest that the phones and the computers are interconnected. Thus, on this

5

record, no fact-finder could reasonably conclude that Martin and Owens made calls from telephones that were connected to autodialers.

Accordingly, **IT IS ORDERED** that Navy Federal's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter final judgment.

Dated at Milwaukee, Wisconsin, this 13th day of March 2012.

s/_____
LYNN ADELMAN
District Judge